The case of the day is United States v. Morales. Mr. Tent. Good morning, your honors. May it please the court, counsel. My name is Bill Stanton and I represent Eduardo Santana. In this appeal, Mr. Santana challenges the sufficiency of the evidence to convict him of participating in a drug conspiracy as well as the denial of a minor minor role reduction at sentencing. The facts in brief are that Santana's co-defendant, Mr. Morales, was plugged in with some drug brokers and was trying to obtain some distribution quantities of narcotics. The government had a tap on Morales' phone and intercepted several phone communications, most of which were in code. My client, at Mr. Morales' behest, served as a translator on some of those phone calls, and he also kicked an empty box on a porch at Morales' bidding. Agents, over the course of this seven-month investigation, intercepted quantities of methamphetamine, cocaine, and fentanyl, and from that seven-month investigation, it was shown that Santana was involved for mere weeks of that. As it relates to the sufficiency of the evidence, admittedly, we have an uphill battle, but we're going to plot ahead. The re was a conspiratorial agreement here that was paltry. The evidence was that Morales and Santana were lifelong friends, that Santana served as a translator on these phone calls as a favor to his friend and not as part of some conspiracy that he unknowingly joined. There was no intention to further the conspiracy, and I think the intercepted communications plainly illustrate that. You have conversations where Santana and Morales are talking, and Morales is talking about, they want us to open up a Chicago office, they being drug suppliers from a foreign country. Santana's response is, well, what office building would we use? He didn't know what he was talking about. Another example would be kind of a Cramdon-esque saying that, in a different context, we're going to go to the moon with this, and my client said, okay. No real grasp or concept of what the co-defendant was talking about, but it was Morales who was the one with the connections. Morales was the one that was coordinating these calls, and my client, who spoke Spanish, would simply translate as Morales asked him to do. Wasn't there some discussion between the two about ripping the guy off? There was a discussion about, between my client and the co-defendant. Take the drugs out of the box when the box gets here and then call this Omar fella and tell him it became empty? Exactly. It was, I don't know if they had watched too many movies, but some type of repackage the box with just packing peanuts or something and pretend that the box had been opened, and confusingly enough, one of the boxes in this case had been delivered empty with a postal inspector's business card inside of it. The only reason I'm raising him, Mr. Stanton, is that, at least as I reviewed this, it looks like he's more than a translator. He seems well aware that Omar is shipping drugs, not widgets or something, and the guy's getting the drugs and distributing them around here and they have this idea, well maybe we can rip him off. We can kind of do this little fooling with these empty boxes. But I guess I'd counter that. He's not just a Spanish interpreter. Is his awareness, in and of itself, akin to joining the conspiracy? Is he trying to profit from the conspiracy? Is he trying to understand the scope of the conspiracy? Is he making any decisions that would further the conspiracy? And my answer to those questions would be no, because even if you review the phone calls before Omar or before the prisoners are on the line, Morales instructs Santana, you say what I tell you to say and nothing more. I can find a new translator. So basically he was very limited in what he wanted my client to do, was just translate word for word and don't add anything, don't take anything away. So as it relates to the sufficiency of the evidence, I would say that the government had to prove three things here, that a conspiracy existed, that my client agreed to join that conspiracy, and that an act in furtherance was done for that conspiracy. And I think the second element here, the agreement to join, simply was lacking. If there's no questions on the sufficiency of the evidence, I'll move on to the minor role reduction argument. It's our position that the district court clearly erred here in denying a minor role reduction under Guideline Section 3B1.2b. And the factors that a court should consider in applying this reduction are the knowledge of the scope of the conspiracy, whether an individual served to make a financial gain from the conspiracy, and the individual's planning and or decision making throughout the conspiracy. Here we have Morales, who was the one giving the directions. Morales was the one with all the discretion, and Santana really had no discretion. So it's our position that Santana was less culpable than most of the other participants in this conspiracy, namely Morales, as well as the three or four drug brokers that were on these phone calls, and that the two-point reduction should in fact have been awarded by the district court. If there's no other questions, I'll reserve the rest for rebuttal. Thank you. Certainly, Mr. Stanton. Ms. Greenle. Good late morning, Your Honors. The evidence here was something the jury said, yes, he was guilty of and did join the conspiracy for. And that evidence was more than ample. Because I would start with just, not only was he more than a translator in the sense that, as Judge Scudder pointed out, he gave advice to the defendant, and not only about how he could rip off or get compensation for not paying for drugs from Omar, but also that they should change phones so they weren't detected by law enforcement, so that they could deal with Suzy in some retaliatory fashion for maybe giving them up. But also, I just think you need to look at the incident that defense counsel refers to as just kicking a box. Because to me, that said a lot of it. Because he didn't just kick a box, right? He went there to protect Morales, so that Morales wouldn't be the one in the center of things, because they believe at the time law enforcement's there, so he volunteers to go. He films it. And then, after filming it to be able to prove to Omar that it is empty, he goes and he pleads with Omar, pleads with him on the life of his children, that this box is in fact empty. And he's doing all that because he shares Morales' interest in satisfying his supplier, in making it clear that they're not just ripping them off and lying about there being no drugs. And he's also showing his interest in making sure these drugs get delivered, get picked up safely. And that's just one example, and then we'll list in our brief all the others. And as well as that he's been compensated for this. And as well as this isn't just something he's involved in for mere weeks, because from the beginning of The Wire, Morales is talking about having given a kilo to Santana for what he did all the way through to the end. And particularly when Morales, when Santana shows that he knows where these drugs are being delivered from the beginning. So all of that's detailed in our brief. And I think it goes to show not only, as the jury did, goes to show that he had the requisite knowledge and intent, and it also goes to support the judge's finding as not being clearly real obvious that he was not a minor participant. Mr. Grimaldi, can I ask you just kind of a factual, clear something up for me question?  Okay. There's a bunch of back and forth in the briefs about at least two people that were in jail that had some role, I think, in connecting the co-defendant, Morales, to this Omar guy. They were middlemen or intermediaries. Yes. They're characterized that way. Is any of that of significance for purposes of evaluating the sufficiency of the evidence to support the 846 conspiracy conviction? And the reason I ask the question is when I went back and looked at the indictment and reviewed the way the evidence was presented and you all briefed it, it seems to me that your position, you can correct me if I'm wrong, is that, no, that's, I mean, yeah, that's kind of part of the case and part of the evidence and part of the context, but it's neither here nor there for purposes of sufficiency on the 846 conviction because the 846 conviction can root itself alone in an agreement between the two co-defendants. Absolutely. These middlemen, intermediaries, whatever, however we prefer to characterize them, they don't have anything to do with it. I would agree. The reason it was part of the evidence and part of the developing of the evidence, it became important in terms of the judge's analysis on the whole buyer-seller thing, which was a Morales issue. It was never a Santana issue. So it became relevant to the judge's analysis of that whole issue and addressing that. Had the jury not found a conspiracy between Santana and Morales, you know, was there a buyer-owned relationship with the others? Okay, I understand. So that's where it became. But as to Santana, 100% you are correct, Your Honor. Okay. And I would maintain now on appeal that's true as to Morales too, but he doesn't raise sufficiency and isn't an issue here today with us. If there are no more questions, the government respectfully requests that you, on the basis of our brief and today's argument, affirm Defendant Santana's conviction in sentence. Thank you. Thank you very much. Anything further, Mr. Stanton? Very briefly, thank you. I'd like to address the expectation that Mr. Santana expected a kilo payment for his activities because something that I learned is that during the course of these conversations, he said, I hope to get it along the lines of, I hope you get a powy. I don't understand what powy means, but the agent clarified that that's just a small bag of water cocaine that he was hoping payment of a user amount of cocaine. So I think any suggestion that there was a kilogram payment waiting for him is belied by that statement. As far as the two men in jail, I think that lends to the analysis, though, of the minor role reduction that we were advocating for because they're active brokering from a jail cell on a contraband cell phone. I think rises to the level of participation that is much more significant than passive translating. So with that, if there's no more questions, I thank you for your time and ask that you grant the relief you're requesting. Thank you. Thank you, Mr. Stanton. The court appreciates your willingness to accept the appointment in this case and your aid to the court as well as your client. The case is taken under advisement and the court will be in recess. Thank you.